UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GABRIELA LERMA RUIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>　　　　Defendant. | CV 16-4221 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　Plaintiff filed this action on June 13, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On September 14, 2017, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

　　Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

# PROCEDURAL BACKGROUND

Ruiz filed an application for disability insurance benefits on May 17, 2013 and an application for supplemental security income on June 10, 2013. In both applications, she alleged an onset date of May 17, 2013. Administrative Record ("AR") 11. The applications were denied initially and on reconsideration. AR 11, 61, 73, 84, 95. Ruiz requested a hearing before an Administrative Law Judge ("ALJ"). On October 3, 2014, the ALJ conducted a hearing at which Ruiz and a vocational expert testified. AR 25-50. On December 19, 2014, the ALJ issued a decision denying benefits. AR 8-20. On April 13, 2016, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Ruiz met the insured status requirements through December 31, 2017. AR 13. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Ruiz had the severe impairments of mild to moderate degenerative joint disease in the bilateral knees; mild degenerative joint disease in the first toe bilaterally; and lumbar disc disease. AR 13.

The ALJ found that Ruiz had the residual functional capacity ("RFC") to perform sedentary work. She could occasionally climb ladders, ropes or scaffolds, and frequently stoop and crawl. She must avoid unprotected heights. AR 15. Ruiz was capable of performing past relevant work as a case manager, substance abuse counselor and health educator. AR 18-19.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

### C. Consultative Examination

"The government is not required to bear the expense of an examination for every claimant." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). "Some kinds of cases, however, do 'normally require a consultative examination,' including those in which 'additional evidence needed is not contained in the records or [the claimant's] medical sources,' and those involving an 'ambiguity or insufficiency in the evidence [that] must be resolved.'" *Id.* (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). "A specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). An ALJ has broad latitude to decide whether or not to order a consultative examination. *Reed*, 270 F.3d at 842.

Ruiz testified that her job was working with drug users. AR 30. Ruiz submitted a letter from her employer notifying her that she was terminated effective May 16, 2013 – the day before the onset date – due to "unsatisfactory communication and interpersonal skills." The letter recites that these issues have been addressed within her team over the past several years and "these interventions are not sustainable in terms of turning around your performance." AR 245.

Ruiz testified that she had worked for this employer for almost seven years. AR 29. She was "irritable" and her "natural tolerance" for the population she served ("injection drug users") was difficult. AR 30.

In addition, Ruiz testified that her primary doctor prescribed venlafaxine (Effexor) for depression. AR 41, 43. Ruiz testified that she felt the medication did not control her emotional symptoms of sadness, anxiety, frustration and depression. AR 43. She previously felt that she did not need mental health treatment but it "might be something that I might need now." AR 44.

Ruiz's medical records indicate that effexor was prescribed as a pain medication. AR 265 (7/2012). Her affect, mood, memory and judgment were normal. AR 268, 299,

349. There is no diagnosis of depression except on one occasion in March 2014. AR 257, 266, 269, 277, 289-90, 300, 315. In March 2014, Ruiz's physician noted depressed mood and flat affect. Her memory and judgment were normal, and she expressed no suicidal ideation. AR 435. Dr. Fontan diagnosed depression, unspecified, and increased the dosage of her existing venlafaxine medication. AR 436. There is no further mention of any depressive symptoms or any diagnosis of depression during later visits in the medical records. AR 504 (5/2014), 513, (6/2014), 648 (9/4/2014), 705 (9/28/2014).

As the ALJ noted, Ruiz complained of anxiety as a reaction to specific medications, but these complaints were noted in 2008 and 2009 as to medications that were discontinued long before the alleged onset date. AR 255, 704.

The ALJ made no finding that a consultative psychological examination was warranted.[2] AR 14-15. The ALJ did not err given the absence of any ambiguity or inadequacy in the medical records as to Ruiz's mental functioning.

### D. **Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Ruiz's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. AR 17.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity

---

[2] The state agency review physicians noted that Ruiz's psychological symptoms appeared non-severe given that her symptoms were managed with medication and without referral for mental health treatment. AR 54, 56, 78-79.

5

of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ found that Ruiz's statements were only partially credible. AR 16, 18. The ALJ relied primarily upon three reasons: (1) the severity of her allegations was not supported by objective medical evidence; (2) her treatment was infrequent and grossly conservative in light of the severity of her allegations; and (3) her daily activities, although limited, did not support the severity of her allegations. AR 17-18.

The first reason is amply supported by substantial evidence in the record. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). As discussed above, the medical records do not support allegations of impairments in mental functioning sufficient to interfere with her ability to work and do not even note complaints by Ruiz to that effect. As for her physical impairments, Ruiz was advised by her doctors to exercise, such as walking or riding a stationary bike, for 30 minutes per day and do isometric knee exercises. AR 306-07; *see also* AR 470 (recommending 30-60 minutes of exercise per day for five days per week), 648 (range of motion exercises). These medical recommendations do not support Ruiz's allegations that she cannot exercise or walk more than half a block. AR 37-38, 200.

Substantial evidence amply supports the ALJ's finding that the objective medical findings do not support the severity of Ruiz's allegations. On July 17, 2012, Ruiz fell down three stairs and had buttock and left shoulder pain. Range of motion was intact, but her left shoulder was painful with pressure sleeping on that side. She had tenderness, no tingling or numbness, no weakness, no swelling and normal strength. AR 255-57. Her lumbar back was tender. Ruiz was diagnosed with back strain and chronic low back pain.[3] AR 257. On July 26, Ruiz had low back pain tenderness, bony tenderness, pain and spasm. She had full range of motion. Her legs showed good strength and coordination with normal toe, heel and tandem gait. Motor strength was 5/5. She was tender over the sacroiliac joint (SIJ) with nontender axial and piriformis. Straight leg raise was negative. AR 267-68. An MRI of the back showed normal alignment with normal vertebral body heights and normal spinal cord. No significant disc bulge was seen at T12-L1, L2-L3, L3-L4 or L4-L5. Mild degenerative changes were seen at L1-L2 and L5-S1. AR 268-69. The EMG was abnormal and indicated electrodiagnostic evidence of left radiculopathy affecting the L5 root with evidence of chronic reinnervation changes and ongoing axon loss. There was no electrodiagnostic evidence of sensory polyneuropathy. There was no finding of numbness or weakness on examination. Ruiz was diagnosed with lumbar disc degeneration and lumbosacral radiculopathy. Dr. Cohen recommended a lumbar epidural steroid injection (LESI) at L5-S1 and planned to discuss weight management, core muscle strengthening and lumbar/lower extremity flexibility. AR 269.

Subsequently, in September 2012, Dr. Fontan noted tenderness of both knees with no effusion, and diagnosed osteoarthritis of the knees. She was continued on her pain medications. AR 289. X-rays of both knees indicated normal alignment, mild to moderate degenerative joint disease with narrowing of the lateral facets of the

---

[3] Ruiz's medical records indicate that hydrocodone was an existing prescription in the earliest physician medical record, July 2012. AR 254.

patellofemoral articulations, and small effusions. AR 291. In October 2012, Ruiz again exhibited tenderness of both knees with no effusion. AR 299. In November 2012, Ruiz presented with knee pain. She was advised to exercise 30 minutes daily and do isometric knee exercises. AR 306-07.

In January 2013, Ruiz presented with the flu and bilateral hand pain. AR 313. Examination of Ruiz's hands indicated a well healed carpal tunnel scar with no tenderness, negative Tinel's test over medial nerve, no triggering digits, no joint swelling, mild pain over small nodule on left thumb, and tenderness over right lateral epicondyle bone in the elbow. Conservative measures for the elbow were discussed. X-rays of the hands were normal. 323-24.

On March 15, 2013, Ruiz received a rheumatology consult for complaints of pain in the hands, elbows, shoulders, low back, knees and feet. AR 341, 347. Dr. Yee noted Ruiz ambulated without support. She had no tenderness or swelling, and normal range of motion in bilateral shoulders, elbows, wrists, hands, hips, ankles and feet. Her knees had normal range of motion without tenderness, swelling or effusion. AR 347-49. Dr. Yee noted that x-rays of the hands in January 2013 were normal. AR 349, 370. As noted above, X-rays of both knees dated September 2012 indicated normal alignment, mild to moderate degenerative joint disease with narrowing of the lateral facets of the patellofemoral articulations, and small effusions. AR 349. Dr. Yee diagnosed osteoarthritis with no clinical evidence of inflammatory arthritis. He recommended treatment with analgesics, NSAIDS or, if needed, steroid injections, and referred Ruiz back to her primary care doctor. AR 349-50. The patient instructions noted that osteoarthritis is "very common as people get[] older" and include, in addition to the potential treatments listed by Dr. Yee, recommendation for exercise to improve muscle strength and coordination. AR 351. In June 2013, Ruiz had tenderness of lower back and mild degenerative joint disease of the bilateral knees. AR 363. In November 2013, x-rays of Ruiz's hands and feet were normal. AR 397-400. In December 2013, there

were no acute complaints.  AR 384-85.  In January and February 2014, Ruiz missed appointments.  AR 382-83.

In March 2014, Dr. Fontan noted that Ruiz exhibited tenderness and bony tenderness of both hands and both feet with no swelling.  AR 435.  X-rays of the bilateral hands indicated normal alignment and mild generalized joint space narrowing, including at the first carpal metacarpal joint.  There was no evidence of erosive arthropathy, calcifications or other evidence of atherosclerotic disease, and no significant soft tissue abnormality.  AR 438.  In May 2014, Ruiz was diagnosed with sesamoiditis of the left thumb and treated with an injection.  AR 504.  In June 2014, a chest x-ray was normal and a mouth examination revealed no evidence of current cancer.  AR 514, 516.  On September 4, 2014, Dr. Fontan noted tenderness of the right shoulder with reduced range of motion, and tenderness of both feet.  X-rays of both feet showed mild degenerative joint disease at the first metatarsophalangeal joints of the big toe.  AR 665.  The right shoulder showed normal alignment, no significant soft tissue abnormality and apparent narrowing at the right acromioclavicular joint.  AR 665.  Dr. Fontan advised that the right shoulder was fine.  AR 670.

The ALJ's finding that Ruiz's treatment was relatively infrequent and grossly conservative is supported by substantial evidence.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (complaints of disabling pain may be undermined by failure to seek more aggressive treatment).  There is no indication in the medical records that Ruiz followed up on the recommended back treatment after her fall in July 2012 or the exercises prescribed for her osteoarthritis.  In December 2013, Ruiz reported that her pain was controlled with current medications although she had run out 3-4 days before the end of that month.  AR 384-85.

The ALJ acknowledged that Ruiz's daily activities were limited but found that they were inconsistent with the severity of her allegations.  AR 17.  Even when daily activities "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."

*Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). Ruiz indicated that she could prepare simple meals, performs some household chores, and occasionally drive and shop, such as to church, although she could not drive for long distances or sit/stand/walk for long periods of time. AR 43-44, 196, 199. Although this reason alone is arguably not supported by substantial evidence, remand is not warranted because substantial evidence supports the ALJ's credibility finding based on the remaining valid reasons and any error does not negate the validity of the ALJ's finding. *Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (concluding ALJ's error in relying on two invalid reasons for discounting credibility was harmless).

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: September 25, 2017

ALICIA G. ROSENBERG
United States Magistrate Judge